O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLANCO ALONZO, JODI VALDES, and MICHELLE DAUBET,<br><br>       Plaintiffs,<br><br>   vs.<br><br>MAXIMUS, INC.,<br><br>       Defendant. | CASE NO. 2:08-CV-06755-JST (MANx)<br><br><br>**AMENDED ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

## I.  Introduction

This matter is before the Court on a Motion for Class Certification filed by Plaintiffs Blanco Alonzo, Jodi Valdes, and Michelle Dabuet (collectively "Plaintiffs"). (Mot., Doc. 76.)[1]  Defendant Maximus, Inc. ("Defendant") opposed the Motion, and Plaintiffs replied.  (Opp'n, Doc. 77; Reply, Doc. 89.)  For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motion for Class Certification.

## II.  Background

Defendant "operates health and human services programs throughout the country, primarily for state and local government agencies."  (Declaration of Colleen Moskal ("Moskal Decl."), Doc. 77-14, ¶ 2.)  In California, Defendant operates the Welfare to Work programs for Los Angeles County, Orange County, and San Diego County.[2]  (Mot. at 1.)  Plaintiffs were employed in Defendant's El Cajon office as Employment Case Managers.  (First Amended Complaint ("FAC"), Doc. 1, Ex. C, ¶ 15.)  Plaintiffs seek to certify a class of all persons employed by Defendant in California as Employment Case Managers, or in positions with substantially similar duties.[3]  (Mot. at ii.)

Plaintiffs originally filed their Complaint in Los Angeles County Superior Court on November 26, 2007.  (Doc. 1, Ex. A.)  On September 14, 2008, Plaintiff filed a First Amended Complaint ("FAC").  Defendant removed the action to federal court on October 14, 2008.  (Doc. 1.)  Plaintiffs' FAC alleges: (1) violation of California Labor Code §§

---

[1] Plaintiffs' initial Motion for Class Certification was filed on March 14, 2011.  (Doc. 73.)  On April 5, 2011, Plaintiffs filed a <u>Corrected</u> Motion for Class Certification, in which Plaintiffs made various typographical corrections without altering the substance of the initial Motion for Class Certification.  (Doc. 76.)  The Court's Order refers to the Corrected Motion.
[2] Defendant's contract with San Diego County ended in mid-2010.  (Mot. at 1.)
[3] Maximus uses various job titles for the individuals who perform the functions of Employment Case Managers.  As Maximus refers to all of these positions as Employment Case Managers, the Court uses this term to refer to all of the positions noted by Plaintiffs in the Class Definition.  (*See* Moskal Decl. ¶ 8; Mot., Class Definition, at ii.)

201-203 due to unpaid wages and unpaid overtimes wages (and as a result, failure to timely pay wages upon discharge); (2) violation of California Labor Code § 226 for failure to provide accurate wage statements; and (3) violation of California Business and Professional Code § 17200 for unfair business practices. In their Motion for Class Certification, Plaintiffs re-label and reorganize the claims as: (1) Bonus/Overtime Claim; (2) Paystub Claim; (3) Off-the-Clock Claim; and (4) Unfair Competition Law Claim. (Mot. at 1-2.) The Bonus/Overtime Claim is based on Defendant's failure to incorporate bonuses earned by Plaintiffs into Plaintiffs' "regular pay" rate for purposes of calculating Plaintiffs' overtime rate.[4] The Paystub Claim is based on Defendant's failure to list Plaintiffs' hourly pay rate and the inclusive dates of Plaintiffs' pay period on the wage statements (also called "paystubs") provided to Plaintiffs. The Off-the-Clock Claim has two prongs. First, Plaintiffs allege that due to Defendant's rounding policy they were forced to work off-the-clock ("Off-the-Clock (rounding) Claim"). Second, Plaintiffs allege that Defendant had a practice of having employees work overtime after clocking out ("Off-the-Clock (working off-the-clock) Claim"). The Unfair Competition Law ("UCL") Claim is derivative of the Bonus/Overtime and Off-the-Clock Claims.[5]

Plaintiffs now move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, to certify a class of:

All persons employed in California by defendant Maximus, Inc. as Employment Case Managers, and Lead Employment Case Managers, Case Manager, or Lead Case Manager, or in positions with substantially similar duties, during any [sic] from November 26, 2003 until the time of final judgment in this action. The class includes the following positions:

---

[4] Plaintiffs are paid overtime at a rate of one-and-one-half times Plaintiffs' "regular pay" rate.
[5] As the UCL Claim is wholly derivative of the Bonus/Overtime and Off-the-Clock Claims, the Court does not independently analyze the UCL Claim for purposes of class certification. (Mot. at 4 ("The Unfair Competition Law claim is co-extensive for all class members because this claim is entirely derivative of the other claims.").)

Manager/Facilitator, Specialist Case Management, Sanctions Specialist, Counselor-Case Management, Counselor-Enrollment/Eligibility, and Specialist-Work Force Analyst.

(Mot. at ii.)  Defendant opposed the Motion for Class Certification, and Plaintiff filed a reply.

### III.  Legal Standard

"Rule 23 'provides district courts with broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court.'"  *Dukes v. Wal-Mart*, 603 F.3d 571, 579 (9th Cir. 2010) (en banc), *cert. granted*, 131 S. Ct. 795 (Dec. 6, 2010) (quoting *Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th Cir. 2001)).  Under Rule 23:

A district court may certify a class only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* at 580(citing Fed. R. Civ. P. 23(a)).  The district court must also determine that one of the following three conditions is satisfied:

(1) the prosecution of separate actions would create a risk of: (a) inconsistent or varying adjudications, or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; or (3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*Id.* (citing Fed. R. Civ. P. 23(b)).  "The party seeking certification bears the burden of

showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met." *Id.*

"[D]istrict courts must make determinations that each requirement of Rule 23 is actually met . . . . While plaintiffs need not make more than allegations as to their substantive claims, whether the suit is appropriate for class resolution must be actually demonstrated, not just alleged, to the district court's satisfaction." *Id.* at 590. Despite the need to determine that each Rule 23 requirement is met, however, the district court should "avoid a trial-level inquiry at the certification stage." *Id.* at 590-91. "A district court's analysis will often, though not always, require looking behind the pleadings, even to issues overlapping with the merits of the underlying claims." *Id.* at 581. "[D]istrict courts may not analyze any portion of the merits of a claim that do not overlap with the Rule 23 requirements." *Id.* at 594. As the Ninth Circuit in *Dukes* recently clarified:

> A district court must sometimes resolve factual issues related to the merits to properly satisfy itself that Rule 23's requirements are met, but the purpose of the district court's inquiry at this stage remains focused on, for example, common questions of law or fact under Rule 23(a)(2), or predominance under Rule 23(b)(3), not the proof of answers to those questions or the likelihood of success on the merits.

*Id.* at 590. Thus, "it is the plaintiff's theory that matters at the class certification stage, not whether the theory will ultimately succeed on the merits." *Id.* at 587 (citing *United Steel Workers v. ConocoPhillips Co.*, 593 F.3d 802, 808-09 (9th Cir. 2010)). The Ninth Circuit has "consistently held that when considering how the facts and legal issues apply to a class under Rule 23(a), the district court must focus on common questions and common issues, not common proof or likely success on the questions commonly raised." *Id.* at 587.

## IV. Evidentiary Objections

At the class certification stage, "the court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims." *Mazza v. Am. Honda Motor Co.*, 254

5

F.R.D. 610, 616 (C.D. Cal. 2008). "[I]n determining whether to certify the class, the district court is bound to take the substantive allegations of the complaint as true." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982) (citing *Blackie v. Barrack*, 524 F.2d 891, 901 n.7 (9th Cir. 1975)). "[T]he court may consider evidence that may not be admissible at trial," *Mazza*, 254 F.R.D. at 616 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)), and a "district court may certify a class without supporting evidence." *Dominguez v. Schwarzenegger*, 270 F.R.D. 477, 483 n.5 (N.D. Cal. 2010) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992)). "Rule 23 gives neither party the right to turn the certification decision into a trial" or "bootstrap[] a trial or summary judgment motion into the certification stage." *Dukes*, 603 F.3d at 591. "The court need not address the ultimate admissibility of the parties' proffered exhibits, documents and testimony at this stage, and may consider them where necessary for resolution of the [Motion for Class Certification]." *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 616 (C.D. Cal. 2008).

Defendant objects to declarations of Ira Spiro, Maria Ester Rodriguez, Michelle Dabuet, Jodi Valdes, and David Lewin. (Docs. 77-26, 77-27, 77-28, 77-29, 77-30, 77-31, 77-32, 95, 96, 97, 98, 100, 101, 102.) These objections are essentially summary judgment style evidentiary objections that attack the admissibility of the evidence proffered by Plaintiffs. The Court may consider inadmissible evidence and need not address the admissibility of evidence at the class certification stage. *See Mazza*, 254 F.R.D. at 616. Moreover, Defendant's evidentiary objections speak to the merits of Plaintiffs' claims and do not bear on the ability of Plaintiffs to satisfy the requirements of Rule 23. Therefore, Defendant's objections are OVERRULED.

Plaintiffs argue that the Court should strike the declarations of Defendant's current employees because Defendant failed to disclose the declarations pursuant to Rule 26 and Defendant failed to comply with California Rule of Professional Conduct 3-600(D). (Reply at 7.) In a footnote, Plaintiffs' counsel offers that "I am nearly certain these declarations were never disclosed or produced. . . . I do have access to my firm's files, but

6

I am not absolutely, positively certain I have access to all papers we have." (Reply at 7 n.1.) Plaintiffs do not offer any binding authority to support their position that the declarations should be stricken. Moreover, district courts have regularly relied on declarations from a defendant's employees when considering a class certification motion under Rule 23. *See, e.g.*, *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 633-34 (N.D. Cal. 2010); *Wilson v. Kiewit Pac. Co.*, No. C09-03630, 2010 WL 5059522, at *3 (N.D. Cal. Dec. 6, 2010). Thus, as Plaintiffs failed to offer sufficient justification for the Court to strike the declarations, the Court considers them for purposes of this Motion.

## V. Discussion

As noted above, in reviewing Plaintiffs' Motion for Class Certification, the Court must determine if Plaintiffs have demonstrated that the proposed class meets the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). The Court considers each requirement of Rule 23(a) in turn and then turns to consider Rule 23(b).

### A. <u>Rule 23(a) - Numerosity, Commonality, Typicality, Representative Party</u>

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "As a general rule, classes of forty or more are considered sufficiently numerous." *Mazza*, 254 F.R.D. at 617; *see also Harris v. Palm Springs Alpine Estates*, 329 F.2d 909, 913-914 (9th Cir. 1964) ("'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class.") (internal quotation marks and citation omitted). Plaintiffs have submitted evidence that there are 336 class members in California. (Declaration of Ira Spiro ("Spiro Decl."), Doc. 73-1, Ex. 1, Def.'s Resp. Special Interrog. No. 9.) Defendant does not contest that numerosity is met and the Court finds that Plaintiffs have satisfied the numerosity requirement because it would be impractical to litigate this matter with 336 individual plaintiffs.

## 2.  Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  For commonality, the Supreme Court and Rule 23 require only "questions of law or fact that [are] common to the claims."  *Dukes*, 603 F.3d at 587 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 (1982)); *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) ("[T]he commonality requirement[] asks us to look only for some shared legal issue or a common core of facts.").  "Commonality focuses on the relationship of common facts and legal issues among class members." *Dukes*, 603 F.3d at 599.  As the Ninth Circuit held in *Dukes*:

> Rule 23(a)(2) has been construed permissively.  All questions of fact and law
> need not be common to satisfy the rule.  The existence of shared legal issues
> with divergent factual predicates is sufficient, as is a common core of salient
> facts coupled with disparate legal remedies within the class.

*Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).  "The commonality test is 'qualitative rather than quantitative' - one significant issue common to the class may be sufficient to warrant certification."  *Id.* (internal quotations marks and citation omitted).  The Ninth Circuit has held that "'commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members,' because such a system implicates common factual questions."  *Dukes*, 603 F.3d at 587 (quoting *Armstrong*, 275 F.3d at 868).

Here, Plaintiff attempts to certify the purported class based on the Bonus/Overtime Claim, Paystub Claim, and Off-the-Clock Claim.


### a.  __Bonus/Overtime Claim__

Plaintiffs allege that common questions of fact and law exist regarding the legality of Defendant's practice of not including bonuses earned by Employment Case Managers in calculating the overtime rate paid to Employment Case Managers.  Defendant does not dispute that it did not include bonuses in calculating the overtime pay rate, instead,

Defendant asserts that: (1) the bonuses are discretionary and therefore properly excluded and (2) the discretionary bonus policies differ between offices. (Opp'n 3-4, 7, 10-11, 20-22; Moskal Decl. at 4-12.)

To satisfy commonality, Plaintiff need only show a common core of facts or a common policy or practice that affects all class members. *See Dukes*, 603 F.3d at 599. Here, Plaintiffs have established a "common policy or practice" that affects all class members across all offices, i.e., Defendant's policy of not including bonuses in the calculation of overtime wages. Defendant's first argument that the bonuses paid to the putative class are discretionary addresses the merits of Plaintiffs' claim, not whether or not this claim is common across the entire putative class. Defendant's own evidence indicates that it was Defendant's corporate policy to not include bonuses in the calculation of overtime pay for all putative class members. (Moskal Decl., ¶ 9; *id.*, Ex. T; Spiro Decl., McCormick Dep., Doc. 73-1, at 47:5-8.) Defendant's second argument, that the Los Angeles County offices and the San Diego County offices had distinct bonus policies, is a difference in degree rather than a difference in kind. The two policies are substantially similar, and the differences do not touch upon Defendant's policy of not incorporating bonuses into the calculation of overtime rates. Because Plaintiffs allege that all putative class members' overtime pay rate was governed by a common policy to not incorporate bonus payments and Defendant does not dispute that it had such a common policy, with regard to the Bonus/Overtime Claim, Plaintiffs have posed questions of law and fact that are common to the class, and have satisfied Rule 23's commonality requirement. *See Dukes*, 603 F.3d at 599.

### b. **Paystub Claim**

Plaintiffs allege that common questions of fact and law exist regarding whether the paystubs provided by Defendant violate California Labor Code § 226(a) because the wage statements fail to include the hourly wage rate and the inclusive dates of payment. (Mot. at 18.) "[I]t is the plaintiff's theory that matters at the class certification stage, not whether

the theory will ultimately succeed on the merits." *Dukes*, 603 F.3d at 587. Here, Plaintiffs have alleged that Defendant had a policy that applied to all members of the putative class, raising a common question of fact and law: whether the wage statements provided by Defendant were unlawful because they failed to include the hourly rate paid and the inclusive dates of the pay period. Defendant does not dispute Plaintiffs' allegations regarding the wage statements. (Opp'n 4, 22-24.) Instead, Defendant argues that this information was not required and that Plaintiffs have failed to demonstrate injury. This speaks to damages and whether Plaintiffs' claim will ultimately succeed on the merits, not as to whether the wage statements were common to all members of the putative class. Thus, with regard to the Paystub Claim, Plaintiffs have posed questions of law and fact that are common to the class, and have satisfied Rule 23's commonality requirement. *See Dukes*, 603 F.3d at 599.

### c. Off-the-Clock Claim

#### i. Rounding

Plaintiffs allege that common questions of fact and law exist regarding Defendant's rounding practice. (Mot. 21-24.) To satisfy commonality, Plaintiff need only show a common core of facts or a common policy or practice that affects all class members. *See Dukes*, 603 F.3d at 599. Here, Plaintiffs have established that all putative class members were required to follow Defendant's rounding policy and Plaintiffs have argued that Defendant's rounding policy was unlawful. Defendant concedes that it has a rounding policy, but asserts that the rounding policy is lawful. (Opp'n at 18-20; Moskal Decl. ¶ 35.) The lawfulness of Defendant's policy is irrelevant at the class certification stage. *See Dukes*, 603 F.3d at 587 ("[I]t is the plaintiff's theory that matters at the class certification stage, not whether the theory will ultimately succeed on the merits."). Further, Defendant asserts that its rounding policy calls for each individual employee to round their own time, therefore each individual's claim is distinct. (Opp'n 18-19.) Although Defendant's rounding policy affected individual class members differently and certainly bears on the

Court's Rule 23(b)(3) predominance analysis below, individual differences do not refute the fact that Plaintiffs have shown that there are indeed common questions of law and fact as to Defendant's rounding policy. *See Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d. 1114, 1121 (E.D. Cal. 2009) ("Differences in the ways in which these practices affect individual members of the class do not undermine the finding of commonality."). Thus, as to the rounding claim, Plaintiffs have posed questions of law and fact that are common to the class, and have satisfied Rule 23's commonality requirement. *See Dukes*, 603 F.3d at 599.

### ii.  <u>Working Off-the-Clock</u>

Plaintiffs also attempt to certify the class based on the working off-the-clock claim, alleging that Defendant failed to pay the class for work performed after clocking out. (Mot. at 24-25.)  Plaintiffs argue that "[a]n independent basis for certification of the off-the-clock claim is the defendant's tremendous pressure on the class members to work overtime off the clock, because of the excessive caseloads, and defendant's practice not to pay for that work."  (*Id.*)  Plaintiffs support this claim with the deposition testimony of each Plaintiff.  (*Id.* at 25.)

Plaintiff Jodi Valdes testified that from November 2003 to December 2003 "[a]lmost everyone in the entire office" worked off-the-clock "[b]ecause there was a Simplex machine upstairs, and they had to stand in line to clock in."  (Spiro Decl., Deposition of Jodi Valdes ("Valdes Dep."), Ex. 6, at 73:18, 73:25-74:1.)  From January 2004 to December 2004, Valdes testified that no one in her unit worked off-the-clock.  (*Id.* at 74:14-75:1.)  From January 2005 to December 2005, Valdes testified that two individuals worked off-the-clock.

Plaintiff Michelle Dabuet testified that "we all pretty much were" working off-the-clock.  (Spiro Decl., Deposition of Michelle Dabuet ("Dabuet Dep."), Ex. 5, at 58:17-25.)  Dabuet also testified that she worked off-the-clock and knew that she would not be paid for the time "[b]ecause I already know in advance what the policy is.  The policy is you get

11

preapproval from your supervisor in order to do overtime and get paid for it." (*Id.* at 73:2-9.) Daubet conceded her knowledge was limited to Defendant's San Diego offices and that she did not have any knowledge of what happened in the Orange County and Los Angeles County offices of Defendant. (*Id.* at 57:4-58:4, 79:3-21.)

Plaintiff Blanco Alonzo testified that he was instructed by various employees in Defendant's El Cajon and Lemon Grove offices that he must work off-the-clock. (Spiro Decl., Deposition of Blanco Alonzo ("Alonzo Dep."), Ex. 4, at 235:2, 73:25-74:1.) "In fact," Alonzo testified that "[he] used to stay there because [he] would be scared [he] would be fired for not staying" to work off-the-clock. (*Id.* at 237:1-3.) Alonzo also testified that "[t]here was a few other people" that were instructed to work off the clock. (*Id.* at 235:23-25.)

Defendant counters Plaintiffs' testimony with declarations from forty currently-employed Employment Case Managers, each declaring "that they never worked off-the-clock and were paid for all time, including overtime." (Opp'n at 17; Compendium of Decls. Submitted in Opp'n to Pls.' Mot. for Class Certification, Doc. 77-9.)

The Court concludes that Plaintiffs have failed to demonstrate commonality with respect to their Off-the-Clock (working off-the-clock) Claim. Plaintiffs' testimony that they worked off-the-clock and that they observed other individuals allegedly working off-the-clock is insufficient to meet Plaintiffs' burden. Although Plaintiffs need not show that they will prevail on the merits of their claim at the class certification stage, "Plaintiff[s] ha[ve] the burden of proving that the Rule 23 requirements have been met." *Mazza*, 254 F.R.D. at 616 (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997)). Plaintiffs have failed to demonstrate that anyone in the Orange County or Los Angeles County offices worked off-the-clock. At best, Plaintiffs have demonstrated that fifteen individuals worked off-the-clock in the San Diego County offices. (*See* Alonzo Dep. at 236:2-236:14; Valdes Dep. at 75:6-9.) Plaintiffs' evidence, however, does not demonstrate that these individuals worked off-the-clock pursuant to any "common policy or practice" by Defendant. Indeed, Plaintiffs' own evidence is contradictory as to why Plaintiffs worked

off the clock.  Plaintiff Alonzo testified that he worked off-the-clock because he feared that he would lose his job.  In contrast Plaintiff Valdes testified that she worked off-the-clock because she had to stand in line to clock in each day.  Moreover, Defendant's evidence indicates that Defendant had a policy that required preapproval before an employee is paid for working overtime, that employees were aware of this policy, and that it was not a common practice or policy of Defendant to require Employment Case Managers to work off-the-clock.  Thus, Plaintiffs failed to show a common core of facts or a common policy or practice that affected all class members with respect to the Off-the-Clock (working off-the-clock) Claim.  *See Dukes*, 603 F.3d at 599.

### 3.  Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Dukes*, 603 F.3d at 613 (quoting *Hanlon*,150 F.3d at 1020).  Thus, to meet the typicality requirement, Plaintiffs need only present claims that are (1)"reasonably coextensive" with, not "substantially identical" to, those of the class, and (2) that resulted from the same policy. *Id.*

Plaintiffs allege that they were Employment Case Managers for Defendant, and that they were subjected to the same unlawful bonus/overtime, wage statement, rounding, and off-the-clock policies and practices as the rest of the purported class.  (Mot. at 4.)  As discussed above, it is undisputed that Defendant's policy is to (1) pay overtime to Employment Case Managers without respect to bonuses; (2) provide wage statements to Employment Case Managers that do not include the hourly rate or the inclusive dates of the pay period; and (3) require all Employment Case Managers to follow Defendant's rounding and time-keeping practices.  These claims are identical between the representative Plaintiffs and the putative class members.

13

Defendant does not argue that its overtime policy with respect to incorporating bonuses applied differently to Plaintiffs or any putative class members.  Defendant does not dispute that the wage statements provided to Plaintiffs differed in any meaningful regard from the wage statements provided to putative class members.  And Defendant does not dispute that its rounding practice was uniform for all putative class members.  Therefore, Plaintiffs have established that their Bonus/Overtime Claim, Paystub Claim, and Off-the-Clock (rounding) Claim are co-extensive with the claims of the putative class.  *See Hanon*, 976 F.2d 508 ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.") (internal quotation marks and citation omitted).

### 4.  Adequate Representation

#### a.  Adequacy of Plaintiffs

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "This factor requires: (1) that the proposed representative plaintiffs do not have conflicts of interest with the proposed class, and (2) that plaintiffs are represented by qualified and competent counsel." *Dukes*, 603 F.3d at 614.  Each of the named Plaintiffs submitted a declaration detailing their involvement in this litigation and their desire to be appointed as class representatives.  (Docs. 73-3, 73-4, 73-5.)

Defendant argues that the representative Plaintiffs are inadequate for four reasons.  First, Defendant argues that Plaintiffs have not been actively involved in this litigation and "[i]t is difficult to imagine less adequate class representatives."  (Opp'n at 12.)  Second, Defendant argues that there is inherent conflict between Plaintiff Valdes' participation and the putative class because Valdes supervised some members of the putative class.  (*Id.*)  Third, Defendant argues that Plaintiffs lack credibility.  (*Id.* at 13)  Fourth, Defendant argues that "[t]here is great animosity to this action within the putative class."  (*Id.* at 15.)

Defendant's first argument lacks merit because Defendant does not provide a rationale as to why the length of time that Plaintiffs have known their attorney or Plaintiffs' failure to attend depositions bears on the adequacy of Plaintiffs to serve as class representatives. Defendant does not provide any legal authority to support its proposition that these factors make Plaintiffs inadequate. Defendant's second argument is moot because it speaks only to Plaintiffs' Off-the-Clock (working off-the-clock) Claim that the Court previously determined failed to meet the requirements of commonality.

Defendant's third argument asserts that Plaintiffs have credibility problems without actually demonstrating that Plaintiffs would be inadequate representatives. Specifically, Defendant argues that Plaintiffs "submitted false discovery responses," Plaintiff Alonzo changed his testimony with respect to the Off-the-Clock (working off-the-clock) Claim, and Plaintiff Dabuet shredded relevant documents. (Opp'n at 14.) Plaintiffs' Reply charges Defendant with overstating these facts. Plaintiffs argue that they did not make false discovery responses but rather that Defendant mischaracterizes their deposition testimony. Plaintiffs note that there were inconsistencies with Alonzo's testimony but assert that these are inconsistencies that are inherent in deposition testimony and the result of confusion rather than a lack of credibility. And Plaintiffs point out that Dabuet shredded documents in March 2006, twenty months before this lawsuit began. Defendant's assertions do not establish that Plaintiffs' would be inadequate class representatives.

Defendant's fourth argument lacks merits as Defendant fails to support its claim that there is animosity by the class directed at the named Plaintiffs. Defendant allegedly supports this proposition with the declarations of forty putative class members. Contrary to Defendant's characterizations of the declarations, however, the forty putative class members do not indicate animosity or hostility toward Plaintiffs but rather indicate that the declarants had experiences different than the named Plaintiffs and that the declarants do not wish to participate in the class action. These declarations do not indicate animosity

1   and Defendant has not offered any reason why putative class members would have

2   animosity towards Plaintiffs.

3       Taken together, Defendant's four arguments do not offer a basis for the Court to

4   find that Plaintiffs are inadequate to represent the class. *See Washington*, 271 F.R.D. at

5   637-38 ("[C]redibility problems do not automatically render a proposed class

6   representative inadequate." (quoting *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996,

7   1015 (N.D. Cal. 2010))).

8

9                        **b. Adequacy of Plaintiffs' Counsel**

10      In determining the adequacy of Plaintiffs' counsel, Ira Spiro, the Court must

11  consider "(i) the work counsel has done in identifying or investigating potential claims in

12  the action; (ii) counsel's experience in handling class actions, other complex litigation, and

13  the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law;

14  and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P.

15  23(g). Plaintiffs' counsel states in his declaration that, "I have worked hundreds of hours

16  investigating and litigating this case, and dozens more hours were worked by other

17  attorneys in my firm, particularly Linh Hua and H. Scott Leviant." (Spiro Decl. ¶ 14.)

18  Counsel states that his firm has eight experienced class action lawyers, three of whom have

19  more than twelve years of experience handling class actions. (*Id.* ¶ 15.) Counsel's firm

20  specializes in class actions, and seventy-five percent of the class actions that the firm

21  handles are wage and hour class actions. (*Id.*) In the past ten years Plaintiffs' counsel's

22  firm has handled more than 200 wage and hour cases. (*Id.*) Counsel indicates that he has

23  been a panelist at continuing legal education seminars, given presentations, and written a

24  Supreme Court amicus brief on topics related to class actions. (*Id.* ¶¶ 18-19.) Defendant

25  does not object to the qualifications or adequacy of Plaintiffs' counsel. Based on the

26  declaration submitted by Plaintiffs' counsel, and his work in this action thus far, the Court

27  concludes that Plaintiffs' counsel has met the adequacy requirements under Rule 23.

28

In summary, Plaintiffs have demonstrated that their Bonus/Overtime Claim, Paystub Claim, and Off-the-Clock (rounding) Claim satisfy the requirements of Rule 23(a). Plaintiffs have failed to demonstrate that their Off-the-Clock (working off-the-clock) Claim satisfies the commonality requirement of Rule 23(a)(2). Therefore, the Court denies class certification with respect to Plaintiffs' Off-the-Clock (working off-the-clock) Claim. As to Plaintiffs remaining three claims, the Court considers whether Plaintiffs have satisfied the requirements of Rule 23(b).

**B. <u>Rule 23(b)(3)</u>**

In addition to establishing the elements of Rule 23(a), Plaintiffs must also satisfy one of the three elements of Rule 23(b). Here, Plaintiffs seek certification under Rule 23(b)(3) because they allege that common questions predominate and a class action would be superior to individual adjudication of the claims. (Mot. at 7-25) Under Rule 23(b)(3), a class action may be maintained if: "[1] the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and [2] that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. R. 23(b)(3) (emphasis added). A Rule 23(b)(3) analysis may require a district court to determine more facts as compared to Rule 23(a) to decide whether plaintiffs have met their burden. *Dukes*, 603 F.3d at 594. The Court may consider:

> (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action.

Fed. R. Civ. R. 23(b)(3).

### 1. Predominance

As to the predominance factor, the Supreme Court has explained that it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. This is a "far more demanding" standard than the commonality requirement of Rule 23(a)(2). *Dukes*, 603 F.3d at 593 (quoting *Amchem*, 521 U.S. at 623-24). "Rule 23(a)(2) is about invoking common questions, *see Falcon*, 457 U.S. at 158, whereas Rule 23(b)(3) requires a district court to formulate 'some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.'" *Id.* (quoting *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 20 (1st Cir. 2008)). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed.1986)).

In analyzing the "relationship between the common and individual issues," *Hanlon*, 150 F.3d at 1022, and trying to "predict" how they will play out, *Dukes*, 603 F.3d at 593, the Court agrees that slight variances may exist as to how class members rounded their time and how bonuses were awarded to class members. But, this issue ultimately goes to damages, not to whether Defendant's policy was unlawful. Courts have found that "individual questions about the number of hours worked, wages, earned, and compensation paid . . . will not defeat certification." *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 595 (S.D. Cal. 2010); *see Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment."). More importantly, the common issues that predominate, and which will be the central focus of the claims and subject to common proof, are whether Defendant's overtime calculation, wage statement, and rounding policies were ultimately unlawful.

The Court also notes that "[a]n internal policy [that] treats all employees alike . . . suggests that the employer believes some degree of homogeneity exists among the employees." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009). In *Wells Fargo*, the Ninth Circuit rejected the idea that an internal policy that applied uniformly to all employees created a presumption that class certification is proper. 571 F.3d at 958 (discussing *Wang v. Chinese Daily News, Inc.*, 231 F.R.D. 602, 612-13 (C.D. Cal. 2005)). The Ninth Circuit found that "[s]uch an approach . . . disregards the existence of other potential individual issues that may make class treatment difficult if not impossible." *Id.* As a "prime example," the Ninth Circuit pointed to the district court's finding in *Wang* that there were "'serious issues regarding individual variations' that were not susceptible to common proof." *Id.* The Ninth Circuit went on, however, to discuss that "[o]f course, uniform corporate policies will often bear heavily on questions of predominance and superiority. Indeed, courts have long found that comprehensive uniform policies detailing the job duties and responsibilities of employees carry great weight for certification purposes." *Id.* The Ninth Circuit then distinguished the case at bar, contrasting "centralized policy" and "corporate policy" which are susceptible to common proof and are "highly relevant to the predominance analysis," *id.*, with a generalized "exemption policy" that "does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties." Id. at 959 (quoting *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 603 (E.D. Cal. 2008)).

Here, Plaintiffs allege that Defendant had uniform corporate policies with respect to bonus/overtime calculations, wage statements, and rounding that applied uniformly to all Employment Case Managers. Defendant's evidence corroborates the allegations of Plaintiffs. Defendant's Vice President of Human Services, Colleen Moskal, indicates in her declaration that although Defendant had separate written bonus policies for Los Angeles County and San Diego County, Defendant had a uniform corporate policy of offering discretionary bonuses that were not considered to be part of an employee's regular

salary, (Moskal Decl. ¶¶ 9, 10), and that Defendant had a uniform corporate rounding policy with respect to hours worked by employees (*id.* ¶¶ 34-35). This was echoed by Defendant's Payroll Director who testified that overtime rates paid to putative class members did not include bonuses. (Spiro Decl., McCormick Dep., Doc. 73-1, at 47:5-8.) Further, the declarations of forty Employment Case Managers from across Los Angeles County, Orange County, and San Diego County that were submitted by Defendant, indicate uniformity in the job responsibilities and policies across the offices in the three counties. (Compendium of Decls., Doc. 77-9.) "Such centralized rules, to the extent they reflect the realities of the workplace, suggest a uniformity among employees that is susceptible to common proof. *Wells Fargo*, 571 F.3d at 958-59. Although the Court cannot rely solely on the presence of that policy to find predominance, it does tend to "undercut[] later arguments that the employees are too diverse for uniform treatment." *Id.* Thus, as to the Plaintiffs' claims, the Court finds that the predominance element is met because the proposed class is sufficiently cohesive and common questions present a significant aspect of the case and can be resolved for all members of the class in a single adjudication. *See Hanlon*, 150 F.3d at 1022.

### 2. Superiority

The Court also finds that a class action would be a superior method of adjudicating the Plaintiffs' claims. "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. "This determination necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* Here, each member of the class pursuing a claim individually would burden the judiciary and run afoul of Rule 23's focus on efficiency and judicial economy. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("The overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy."). Further, litigation costs would likely "dwarf potential recovery" if each class

member litigated individually.  *Hanlon*, 150 F.3d at 1023.  "[W]here the damages each plaintiff suffered are not that great, this factor weighs in favor of certifying a class action."  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1199 n.2 (9th Cir. 2001) (quoting *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 652 (C.D. Cal. 1996)).

Considering the non-exclusive factors under Rule 23(b)(3)(A)-(D), the Court finds that class members' potential interests in individually controlling the prosecution of separate actions and the potential difficulties in managing the class action do not outweigh the desirability in concentrating this matter in one litigation.  *See* Fed. R. Civ. P. 23(b)(3)(A)-(D).  This particular forum is desirable because the class members worked in California.  *See* Fed. R. Civ. P. 23(b)(3)(C).   Finally, the Court is not aware of any litigation concerning the controversy that has already begun by or against class members.  *See* Fed. R. Civ. P. 23(b)(3)(C).

## VI. Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motion for Class Certification.

(1) The following class is CERTIFIED under Rule 23(b)(3) with respect to Plaintiffs' Bonus/Overtime Claim and Off-the-Clock (rounding) Claim, which Plaintiffs allege was in violation of California Labor Code §§ 201-203; Plaintiffs' Paystub Claim, which Plaintiffs allege was in violation of California Labor Code § 226; and Plaintiffs' UCL Claim:

> All persons employed in California by defendant Maximus, Inc. as Employment Case Managers, and Lead Employment Case Managers, Case Manager, or Lead Case Manager, or in positions with substantially similar duties, during any [sic] from November 26, 2003 until the time of final judgment in this action. The class includes the following positions: Manager/Facilitator, Specialist Case Management, Sanctions Specialist, Counselor-Case Management, Counselor-Enrollment/Eligibility, and Specialist-Work Force Analyst.

(2) Plaintiffs Blanco Alonzo, Jodi Valdes, and Michelle Daubet are APPOINTED as class representatives.

(3) Plaintiffs' counsel of record, attorneys Ira Spiro and Linh Hua, of the law firm Spiro Moss LLP, are APPOINTED as class counsel.[6]

(4) The Court directs the parties to meet-and-confer, and to submit an agreed-on form of class notice that will advise class members of, among other things, the damages sought and their rights to intervene, opt out, submit comments, and contact class counsel. The parties

---

[6] Plaintiff's Counsel asked the Court to also appoint H. Scott Leviant as class counsel. H. Scott Leviant, however, has not made an appearance in this case.

22

shall also jointly submit a plan for dissemination of the proposed notice. The parties will need to work together to generate a class list to be used in disseminating class notice. The proposed notice and plan of dissemination shall be filed with the Court on or before **July 25, 2011**.

(5) The parties shall designate their expert witnesses, and make the required disclosures, by no later than **July 25, 2011**, and do likewise for any rebuttal expert witnesses by no later than **August 22, 2011**. All expert discovery shall be completed by **September 19, 2011**.

(6) Defendant's Motion for Partial Summary Judgment (Doc. 88) is VACATED without prejudice to its refiling. Accordingly, the hearing set for June 27, 2011, at 10:00 a.m., is removed from the calendar.

(7) Any dispositive motions shall be filed in accordance with the federal and local rules, and the Orders of this Court, and in no event shall they be heard later than **October 24, 2011**.

DATED: June 17, 2011

**<u>JOSEPHINE STATON TUCKER</u>**
JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE